SUNSHINE STATE BANK, South Miami, Florida, Rafael L. Corona, Ray L. Corona, and Ricardo R. Corona, Petitioners,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.

No. 85–5741.

United States Court of Appeals, Eleventh Circuit.

March 13, 1986.

Robert L. Shevin, Sharber, Shevin, Shapo & Heilbronner, P.A., Jeffrey M. Weissman, Miami, Fla., for petitioners.

Thomas A. Schulz, James A. Clark, Federal Deposit Ins. Co., Washington, D.C., for respondent.

Before RONEY, FAY and HATCHETT, Circuit Judges.

PER CURIAM:

This is a petition for review by a bank and its principal stockholders and officers of a decision of the Board of Directors of the Federal Deposit Insurance Corporation. Oral argument was heard on an expedited basis, and extensive briefs have been filed by both parties addressing numerous charges leveled against the Board's removal of the individual appellants from the bank and cease and desist orders concerning the bank's operation. The Court has reviewed completely the briefs in light of the oral argument and made a close study of the 100-page initial decision of the Administrative Law Judge, who held an evidentiary hearing, the 325-page decision of the Board of Directors, and portions of the voluminous record, particularly those portions relating to the numerous disputed loan classifications. Based on the proper standard of review that this Court is required to follow in a case of this kind, we deny the petition to modify, terminate or set aside the order and affirm the action of the FDIC.

Petitioners Sunshine State Bank and Rafael, Ray, and Ricardo Corona challenge the action of the FDIC permanently prohibiting the Coronas from participating in banking activities on behalf of the Bank or any other FDIC-insured institution, and requiring petitioners' compliance with a final cease and desist order.

The critical decisions upon which the agency action turned involve the proper classification to be given the loans in the Bank's portfolio. The ALJ decided that a great many of the loans were misclassified by the FDIC bank examiners, so that the Bank was not in as precarious a condition as the examiners thought, and the individuals had not committed the improper practices the Board asserted. Thus, the ALJ decided the appropriate cease and desist order was less onerous than the Board sought, and that the prohibition against the individual petitioners was unwarranted.

On review of the ALJ's recommended decision, the Board held that the ALJ did not give proper weight to the examiners' loan classifications, and erred in substituting his own judgment for that of the examiners. Upon consideration of the examiners' classifications under what the Board considered the proper standard of review, the Board imposed a more severe cease and desist order than that recommended by the ALJ, and upheld the prohibition from banking of the individuals.

■ In our judgment, the outcome of the appeal to this Court turns on the amount of deference the ALJ was required to give to the FDIC bank examiners' recommendations. We hold that the Board correctly determined that the unique experience of the bank examiners involved in this examination leads to the conclusion that their classifications were entitled to deference and could not be overturned unless they were shown to be arbitrary and capricious or outside a "zone of reasonableness."

A brief review of the facts is sufficient for the purpose of this opinion. The Sunshine State Bank is a state chartered commercial bank located in South Miami, Florida. The Corona family, Rafael, the father, and Ray and Ricardo, the sons, acquired the Bank in 1978. Since acquiring control, each of the three Coronas has served as an officer and director.

The FDIC conducted examinations of the Bank in 1983. As a result of these examinations, the team of examiners eventually classified $3,710,000 of the Bank's loans as "Loss," $1,285,000 as "Doubtful," and $25,822,000 as "Substandard." About 47% of the Bank's total loans were adversely classified. These adversely classified loans amounted to 581% of total equity capital

and reserves. The examiners also cited numerous violations of law in connection with the Bank's procedures.

In late 1983 and early 1984, the FDIC issued three separate Notices of Charges and of Hearing, charging the Bank with engaging in unsafe and unsound practices and committing violations of law. The FDIC also issued a Notice of Intention to Remove from Office and to Prohibit from Further Participation ("Removal Notice") against Rafael, Ray, and Ricardo Corona, charging the Coronas with engaging in unsafe and unsound banking practices, violations of laws and regulations, and breaches of fiduciary duties evidencing a willful or continuing disregard for the Bank's safety and soundness.

All of the actions initiated by the various Notices were consolidated in a single month-long hearing before the Administrative Law Judge in the summer of 1984. During the hearing, petitioners disputed 106 of the FDIC's loan classifications. The ALJ, in his Recommended Decision, changed 75, or over 70%, of the contested classifications. The ALJ's independent analysis of the Bank's loans led him to conclude that the examiners should have classified assets adversely in the amount of $18,614,300, rather than the over $32,000,-000 classified adversely by the examiners.

Reviewing the ALJ's Recommended Decision and the parties' exceptions, the Board, concluding that the ALJ's "de novo" standard of review was inappropriate, reviewed independently the examiners' classifications and adjusted the total assets subject to adverse classification from the $32,246,000 found at the September 30, 1983 examination to $26,487,000. The Board agreed with 18 of the ALJ's reclassifications, although not necessarily for the same reasons given by the ALJ.

■ The Board correctly determined the weight that should be given to the recommendations of expert bank examiners. There are few decisions that instruct on the point. We set forth here verbatim the reasoning of the FDIC Board and adopt it as our own:

Although there are no court opinions addressing the weight to be given examiners' loan classifications, the Board's inquiry on this point is guided by several decisions addressing agency functions which require similar exercises of expert judgment and informed discretion. The courts have uniformly recognized that certain types of agency judgments are not susceptible to strict "proof" because they involve the exercise of discretion, technical expertise and informed prediction about the likely course of future events. One court's explanation of the deference accorded such judgments is equally applicable to the judgments made by FDIC commissioned bank examiners in assigning loan classifications:

[T]he Commission's projection of carrier economic conditions three years into the future is a kind of agency function that the Supreme Court has recognized to be *primarily a question of probabilities, and thus peculiarly subject to the expert experience, discretion, and judgment of the Commission.* In making a predictive judgment, the expertise of the Commission supplements, and may supplant, the projections placed in the record by the parties. ... *To hold otherwise would paralyze agencies merely because the future is not subject to proof.* While an agency cannot make a projection that is without any reasonable basis, the role of substantial evidence is greatly diminished.

*Missouri-Kansas-Texas Railroad Co. v. United States,* 632 F.2d 392, 406 (5th Cir.1980) (emphasis added) (citations omitted). The United States Supreme Court has also consistently recognized the deference which should be afforded to judgments and predictions made by an agency within its area of special expertise. *See, e.g., Baltimore Gas & Elec-*

*tric Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983); *Federal Communications Commission v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 813–14, 98 S.Ct. 2096, 2121, 56 L.Ed.2d 697 (1978).

Congress has instructed this Board to "appoint examiners", and has provided that "[e]ach examiner shall have power to make a thorough examination of all of the affairs of the bank and its affiliates, and shall make a full and detailed report of the condition of the bank to the Corporation." 12 U.S.C. § 1820(b). After extensive training, lengthy apprenticeship and careful evaluation, FDIC examiners are appointed as "commissioned examiners", and thereby vested with authority to make informed predictions about the risk inherent in a bank's assets. This exercise of informed judgment on the part of commissioned examiners is entitled to deference, and should not be disregarded in the absence of compelling evidence that it is without rational basis.

The Board does not, of course, mean to suggest that the examiners' conclusions are unreviewable. Despite their extensive training and experience, commissioned examiners are by no means infallible, and it is both necessary and appropriate that their classifications be subject to some degree of scrutiny. However, the appropriate degree of scrutiny will vary depending upon whether the ALJ is reviewing strict factual findings or discretionary decisions requiring the exercise of informed judgment.

Asset classifications are based upon objectively verifiable facts. For example, an examiner might find that a loan has been delinquent for six months; that collateral for the loan is a certain parcel of land; and that the borrower's annual salary is $30,000. Because each of these conclusions consists of objectively verifiable facts requiring no particular training or expertise, the ALJ as fact finder is entitled to reach his own de novo conclusions as to the correctness of these underlying factual findings.

After ascertaining the relevant facts, the examiner then applies his expertise and training to those facts to reach certain conclusions about the likelihood of a particular loan being repaid. It is with respect to this second step, where certain expert inferences and judgments are made, that the ALJ is required to defer to the examiner's expertise in reviewing the examiners' classification conclusions. The ALJ may not substitute his own subjective judgment for that of the examiner, but may set aside the classification if it is without objective factual basis or is shown to be arbitrary and capricious. The Board finds that in many cases the ALJ failed to meet either of these tests.

Decision of FDIC Board of Directors at 26–30 (footnotes omitted).

The Board noted that none of the FDIC examiners taking part in the examination were simply equivalent to "any other 'expert' witness," as the ALJ suggested. The expertise of the bank examiners was unique. Each examiner receives extensive training and goes through a lengthy apprenticeship and careful evaluation before being accorded the substantial examination and reporting powers granted in 12 U.S. C.A. § 1820(b). The statutory scheme vests examiners with authority to make informed predictions concerning the risk inherent in a bank's assets. The examination team spent over 3000 hours in a detailed analysis of the Bank's assets. The examiner-in-charge of the September examination had participated in over 500 bank examinations, over 150 as examiner-in-charge. The other five examiners had participated collectively in over 1650 examinations, serving as examiner-in-charge of over 515. In reaching conclusions about the likelihood of a particular loan being repaid, the examiner applies his expertise, training and experience to the facts and

makes inferences and judgments. To properly predict the chances of a given loan being repaid, a person needs this kind of expertise. Unless shown to be arbitrary or capricious or outside a zone of reasonableness, the ALJ, the Board, and the courts must give significant deference to these experts.

█ In addition to the deference that must be paid by the ALJ, and indeed, by the Board itself, to the judgment of such experts, this Court, in its review of the final agency action, cannot reverse the FDIC Board action unless the findings upon which it is based are not supported by substantial evidence on the record as a whole, or unless the remedies formulated by the Board constitute an abuse of discretion or are otherwise arbitrary and capricious. 5 U.S.C.A. § 706(2)(A), (E); *Fitzpatrick v. FDIC*, 765 F.2d 569, 574 (6th Cir.1985); *Bank of Dixie v. FDIC*, 766 F.2d 175, 178 (5th Cir.1985); *Groos National Bank v. Comptroller of Currency*, 573 F.2d 889, 897 (5th Cir.1978); *see also McHenry v. Bond*, 668 F.2d 1185, 1190 (11th Cir.1982).

█ This Court has conducted an extensive review of the record on each of the loans particularly argued in petitioners' brief and has sampled from among the others. With regard to each of these loans, the Court has concluded that the facts upon which the Board's classifications are made are supported by substantial evidence on the record as a whole, and that the Board's remedies do not constitute an abuse of discretion and are not otherwise arbitrary and capricious. The remedies imposed against the Coronas, while undoubtedly severe, were within the Board's powers.

We have examined carefully each of petitioners' other arguments and find that none justify this Court's interference with the agency action. The stay previously granted in this Court will be lifted upon the issuance of our mandate.

AFFIRMED.