Manley **ABERCROMBIE**, Richard Calloway, Richard Eckel, Donald Hedrick, E. Weston Sloan, Directors of the Rushville National Bank, 202 North Main Street, Rushville, IN.

v.

**OFFICE OF the COMPTROLLER OF the CURRENCY, 490 L'Enfant Plaza, S.W., Washington, D.C., 20219.**

No. IP 86–825–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 12, 1986.

Vance Hartke and Wayne Hartke of Hartke and Hartke, Falls Church, Va., for plaintiffs.

John D. Tinder, U.S. Atty., and Charles Goodloe, Asst. U.S. Atty., Indianapolis, Ind., Richard K. Willard, Asst. Atty. Gen., and Eugene M. Katz and Frank C. Bonaventure, Jr., Office of the Comptroller of

the Currency, Washington, D.C., for defendant.

## ORDER

STECKLER, District Judge.

This matter comes before the Court upon the plaintiffs' application for a temporary restraining order and preliminary and permanent injunction. The plaintiffs are Manley Abercrombie, Richard Calloway, Richard Eckel, Donald Hedrick, and E. Weston Sloan, members of the Board of Directors of the Rushville National Bank (hereinafter "directors"). The directors want this Court to enjoin a hearing in which the defendant, Office of the Comptroller of the Currency, is seeking to impose civil money penalties.

The Court held a hearing on the directors' application for injunctive relief on July 11, 1986. The Court has carefully considered the arguments made at that hearing as well as the legal memorandums and supporting documents that the parties have filed with the Court. The Court now finds that it lacks jurisdiction to enjoin the administrative action and therefore denies the directors' application.

The Rushville National Bank ("Bank"), Rushville, Indiana, is supervised and regulated by the Office of the Comptroller of Currency ("OCC"). On June 29, 1983, the OCC and the Bank, through its Board of Directors, entered into a stipulated cease and desist order. On June 19, 1984, the OCC and the Bank entered an amended cease and desist order. The Comptroller of Currency has the authority to issue cease and desist orders under 12 U.S.C. § 1818(b). This statute provides at Section 1818(i)(2)(i) that:

"[a]ny insured bank which violates or any ... director ... participating in the conduct of the affairs of such a bank who violates the terms of any [cease and desist order] of this section, shall forfeit and pay a civil penalty of not more than $1,000 per day for each day during which such violation continues...."

In 1985, the OCC determined that the directors had failed to insure the Bank's

compliance with the terms of the amended cease and desist order. Thus, pursuant to 12 U.S.C. § 1818(i)(2), the OCC notified the directors of the assessment of civil money penalties. A hearing on the penalties before an Administrative Law Judge ("ALJ") was scheduled for July 8, 1986. The directors moved the ALJ to dismiss the administrative action for lack of jurisdiction. The ALJ denied the motion on June 26, 1986. On July 2, 1986, the directors asked this Court to enjoin the administrative action.

■ This Court lacks jurisdiction to enjoin the administrative action. The federal district court does not have jurisdiction to enjoin action taken by the OCC under 12 U.S.C. § 1818 unless the action is a clear departure from statutory authority. *Groos National Bank v. Comptroller of Currency,* 573 F.2d 889, 895 (5th Cir.1978). The statute provides that "except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1). Section 1818 as a whole provides a detailed framework for regulatory enforcement and for an orderly review of the various stages of enforcement. In the case of a civil money penalty, Section 1818 provides that a person against whom an order imposing a civil money penalty has been entered after an agency hearing under the Section "may obtain review by the United States court of appeals for the circuit in which the home office of the insured bank is located." *Id.* § 1818(i)(2)(iv). Where Congress has established such a detailed statutory procedure for obtaining judicial review of administrative action in the courts of appeal, litigants may not avail themselves of the externalized medium of collateral attack in the district courts to thwart the legislative design. *First National Bank of Scotia v. United States,* 530 F.Supp. 162, 168 (D.D.C.1982).

■ The directors argue, however, that the district court can assert jurisdiction

over this case since the OCC is actually trying to impose personal liability on the directors under the guise of a "civil money penalty." This would not only be a clear departure from the statutory authority of Section 1818, *Groos,* 573 F.2d at 895, but it would also be an action in which Congress has given the district court exclusive jurisdiction under 12 U.S.C. § 93a. The directors cite in support of their position the recent case of *Larimore v. Comptroller of Currency,* 789 F.2d 1244 (7th Cir.1986) (en banc). In *Larimore* the Seventh Circuit Court of Appeals held that the cease and desist power of Section 1818 did not give the Comptroller the authority to impose personal liability on individual directors. Rather, under Section 93a only the district court had jurisdiction to impose personal liability.

The *Larimore* case involved an action to compel the directors of a bank to reimburse the bank for losses on loans the bank made in violation of the legal lending limit. The banking laws at 12 U.S.C. § 84 establish the lending limit for banks regulated by the OCC. The bank had made loans in excess of the limit, and the OCC sought to compel the directors to reimburse the bank for losses which resulted from the violation. The OCC argued that it had the authority to compel such reimbursement under its cease and desist power. Section 1818(b)(1) authorizes the OCC to issue cease and desist orders on banks and their directors to correct banking violations. The section further authorizes the OCC "to take affirmative action to correct the conditions resulting from any such violation." The OCC contended that compelling the directors to reimburse the bank was "affirmative action" under the statute. The Court of Appeals disagreed. The Court found that the OCC was actually seeking to impose personal liability. The Court reasoned that allowing the OCC to impose personal liability under the cease and desist power would sanction administrative preemption of the statutory enforcement scheme designed by Congress which through Section 93a reserved sole jurisdiction in the district courts to adjudicate the

personal liability of the bank directors. 789 F.2d at 1252. The Court stated, however, that the OCC does have the power to impose *civil penalties* upon officers and directors for violations of the banking laws" and that "the penalty may be reviewed in an administrative hearing and by appeal to a United States Circuit Court of Appeals." 789 F.2d at 1254. [Emphasis added.]

This case then turns on the construction of the civil penalty provision and its application by the OCC to the directors of the Rushville National Bank. If the OCC is properly seeking a civil money penalty, then this Court lacks jurisdiction to enjoin the administrative proceeding. *See* 12 U.S.C. § 1818(i)(1). If, on the other hand, the OCC is actually trying to impose personal liability, then exclusive jurisdiction is in the district court, and this Court must enjoin the administrative proceeding. *See id.* § 93a.

The directors offer a construction of the civil penalty provision of Section 1818 that is very narrow. They argue that the provision is only intended to address a continuing violation, and therefore, a civil penalty cannot be assessed for a past violation. The directors rely on the fact that the civil penalty provision is written in the present tense. This, argue the directors, indicates a congressional intent that the civil penalty provision only be applied to continuing violations, while, in contrast, Section 93a was drafted in the past tense to address past violations. The directors conclude that since the OCC is imposing damages for a past violation, *i.e.,* the failure to comply with the terms of the cease and desist order, this case involves personal liability rather than a civil penalty. Therefore, the district court would have exclusive jurisdiction under Section 93a.

■■■ However, the Court upon examining the legislative history of the civil penalty provision and upon considering the entire legislative framework for enforcement of the banking laws, finds that the civil money penalty provision is not as nar-

row as the directors would like to construe it. The civil money penalty was intended to apply not only to continuing violations, but also to *past violations of a cease and desist order*. The civil money penalty provision of Section 1818 was designed to make individuals and institutions take seriously cease and desist orders issued by the OCC. *See* S.Rep. 94–843, 94th Cong., 2nd Sess., at 9. Thus, the penalty should be available to the OCC whether the violation of the cease and desist order occurred in the past or is continuing at present. While this penalty provision could not be used in situations where the more appropriate remedy is personal liability, as under Section 84, it can certainly be used to impose a daily penalty on past or present violations of a cease and desist order. The Directors argue that the OCC is not here assessing a daily penalty since one director has been assessed a penalty of $15,000.00 while the other directors have been assessed a penalty of $10,000.00. However, Section 1818(i)(2)(i) specifically states that the OCC "may, in its discretion, compromise, modify or remit any civil money penalty which is subject to imposition or has been imposed...." The statute then gives the OCC the authority, in its discretion, to reduce the daily money penalty for individual directors. Therefore, the fact that directors here have been assessed varying amounts does not necessarily lead to the conclusion that they have been assessed something other than a daily money penalty.

The legislative history of the civil money penalty also indicates that the penalty was to have a "self-enforcing effect." *See* S.Rep. 94–843, 94th Cong., 2nd Sess., at 9. This indicates that the legislation itself is to have a deterrent effect, not that the penalties are only to serve as a disincentive to continuing violations. Thus, the fact that the statute was written in the present tense has no bearing on the type of violation the penalty was intended to address. Furthermore, if the civil money penalty could only be used to address a continuing violation, the directors could avoid liability by simply stopping the violation before

they were served with notice of the penalty. Such a construction would greatly abrogate the deterrent value of the penalty provision since it would allow directors to violate a cease and desist order without fear of penalty as long as they kept a vigilant eye towards the OCC. The directors' construction of the civil penalty provision would, in effect, render it no more than a secondary cease and desist order. Accordingly, the directors' narrow construction must be rejected.

■ The directors also argue that if this Court does not enjoin the administrative proceeding, they will be deprived of their constitutional rights. The Court finds that this argument is without merit. The administrative hearing must be conducted in accordance with due process of law, *see Galvan v. Press*, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954), and review of the administrative decision is available in the Circuit Court of Appeals. *See* 12 U.S.C. § 1818(i)(2)(iv). Further, the imposition of such penalty is not a function reserved exclusively to the Article III court. The Secretary of Labor is authorized to impose a similar civil penalty for violations of the Occupational Safety and Health Act (OSHA) under 29 U.S.C. § 666. This provision allows the imposition of a civil penalty of $10,000.00 without any provision for judicial review of the fact of the violation or the amount of the penalty. This provision has been upheld against constitutional attack, *see Frank Irey, Jr., Inc. v. Occupational Safety and Health Review Commission*, 519 F.2d 1200 (3d Cir.1975), *aff'd*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977); likewise, the statute at issue here is not constitutionally infirm.

■ In the final analysis, this Court cannot intervene unless the agency is clearly exceeding its statutory authority. It is the function of the agency—rather than this Court—to apply its expertise to determine which sanctions best carry out the policy of the statute. *See Jacob Siegel Co. v. FTC*, 327 U.S. 608, 611–13, 66 S.Ct. 758, 759–60, 90 L.Ed. 888 (1946).

This Court finds that the OCC is attempting to impose a civil money penalty upon the directors of the Rushville National Bank pursuant to 12 U.S.C. § 1818(i). The statute provides that review is to be in the Circuit Court of Appeals. The statute further specifically prohibits this Court from exercising jurisdiction to enjoin the administrative action. Accordingly the plaintiffs' application for a temporary restraining order and a preliminary and permanent injunction is DENIED.