833 F.2d 672
 90 A.L.R.Fed. 331, 56 USLW 2293
 Manley ABERCROMBIE, Richard Calloway, Richard Eckel, Donald
Hedrick, and E. Weston Sloan, Directors of the
Rushville National Bank, Plaintiffs-Appellants,
v.
OFFICE OF the COMPTROLLER OF the CURRENCY, Defendant-Appellee.
 No. 86-2493.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 19, 1987.
Decided Nov. 12, 1987.
 
 Vance Hartke, Hartke & Hartke, Falls Church, Va., for plaintiffs-appellants.
 Frank C. Bonaventure, Jr., Office of the Comptroller of the Currency, Washington, D.C., for defendant-appellee.
 Before COFFEY, RIPPLE, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Plaintiffs, Manley Abercrombie, Richard Calloway, Richard Eckel, Donald E. Hedrick, and E. Weston Sloan (the directors) are directors of the Rushville (Indiana) National Bank (Bank). The directors filed a complaint in the Southern District of Indiana seeking to enjoin the Office of the Comptroller of the Currency (Comptroller) from imposing civil money penalties (CMP's) on them pursuant to 12 U.S.C. Sec. 1818(i)(2)(i). The district court denied the directors relief, holding that it had no jurisdiction to enjoin the Comptroller's actions. Abercrombie v. Office of the Comptroller of the Currency, 641 F.Supp. 598 (S.D.Ind.1986). We affirm the district court's judgment that it lacked jurisdiction.
 
 I.
 
 2
 The Comptroller regulates this country's national banks, including the Rushville National Bank. Since 1974, the Comptroller has been concerned with several problems at the Bank that, in the Comptroller's estimation, affected the Bank's ability to operate safely and soundly. According to the Comptroller, the Bank's problems included deteriorating asset quality, failure to adhere to the Bank's lending policy, inadequately supervised lending, excessive expense charges, and conflicts of interest.
 
 
 3
 On June 29, 1983, the Comptroller and the Bank agreed to a cease and desist order. See 12 U.S.C. Sec. 1818(b) (authorizing the appropriate federal banking agency to order any insured bank to cease and desist any unsafe or unsound banking practice or violation of banking laws; a bank may consent to cease and desist order). On June 19, 1984, the Comptroller and the Bank agreed to amend the outstanding cease and desist order. The cease and desist order, and amendments, addressed what the Comptroller perceived to be the Bank's continuing problems.
 
 
 4
 The Comptroller examined the Bank several times between June, 1983 and January, 1985. According to the Comptroller, these examinations revealed that the Bank was not complying with the cease and desist order. The Comptroller concluded from the Bank's repeated noncompliance with the cease and desist order that the Bank's directors had not adequately supervised the Bank to ensure compliance.
 
 
 5
 12 U.S.C. Sec. 1818(i)(2)(i) allows the Comptroller to assess civil money penalties against directors of banks that violate cease and desist orders:
 
 
 6
 (2)(i) Any insured bank which violates or any officer, director, employee, agent, or other person participating in the conduct of the affairs of such a bank who violates the terms of any order which has become final and was issued pursuant to subsection (b), (c), or (s) of this section, shall forfeit and pay a civil penalty of not more than $1,000 per day for each day during which such violation continues.... The penalty may be assessed and collected by the appropriate Federal banking agency by written notice. As used in this section, the term "violates" includes without any limitation any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation.
 
 
 7
 On October 25, 1985, the Comptroller assessed a $15,000 CMP against Hedrick, and $10,000 CMP's against Abercrombie, Calloway, Eckel, Sloan, and William F. Smith (a director who settled with the Comptroller and is not a party to this appeal). The Comptroller apparently assessed the CMP's for violations that occurred well before October, 1985, since the Notice of Assessment specifically mentioned ten violations of the amended cease and desist order that the Comptroller found during a January 31, 1985 examination. The Notice of Assessment did not state on how many or on which days the violations had occurred, nor did it state whether the violations still existed as of October 25, 1985.
 
 
 8
 On November 6, 1985, the directors requested an administrative hearing pursuant to 12 U.S.C. Sec. 1818(i)(2)(iii) to challenge the penalty assessments. The directors soon changed their strategy, however, and filed a motion requesting the administrative law judge (ALJ) to dismiss the administrative proceedings, alleging that the Comptroller had no authority to assess CMP's against them for violations that occurred before the assessment. The ALJ rejected the directors' contention and denied their motion. On July 2, 1986, the directors sued in district court seeking to enjoin the administrative proceedings and the imposition of CMP's against them. The district court denied the directors' application for injunction. 641 F.Supp. at 600. The district court, after examining Sec. 1818, concluded that Congress had specifically withdrawn jurisdiction from the district courts to enjoin action taken by the Comptroller under that section. Id. The district court, though, stated that jurisdiction would exist if the action was "a clear departure from statutory authority." Id. (citing Groos National Bank v. Comptroller of the Currency, 573 F.2d 889, 895 (5th Cir.1978)). The district court held that the Comptroller acted within his statutory authority in assessing CMP's against the directors. Therefore, the court held that it had no jurisdiction to enjoin the administrative action here. Id. at 601-03.
 
 II.
 
 9
 Federal courts are courts of limited jurisdiction. All federal courts, other than the Supreme Court, derive their jurisdiction from Congress' exercise of its power under Article III, Sec. 1 of the Constitution to "ordain and establish" inferior courts. Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943). "The Congressional power to ordain and establish inferior courts includes the power of 'investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.' " Id. (quoting Cary v. Curtis, 44 U.S. (3 How.) 236, 245, 11 L.Ed. 576 (1845)).
 
 
 10
 As the district court correctly noted, "Section 1818 ... provides a detailed framework for regulatory enforcement and for an orderly review of the various stages of enforcement." 641 F.Supp. at 600. As part of this framework, 12 U.S.C. Sec. 1818(i)(1) provides:
 
 
 11
 Except as otherwise provided in [Sec. 1818], no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [Sec. 1818], or to review, modify, suspend, terminate, or set aside any such notice or order.
 
 
 12
 12 U.S.C. Secs. 1818(i)(2)(iii) and (iv) establish the review procedure applicable when the Comptroller assesses a CMP. The person assessed may, as the directors did here, request an administrative hearing to review the assessment within ten days after the Comptroller issues the notice of assessment. 12 U.S.C. Sec. 1818(i)(2)(iii). The person may then appeal an unfavorable administrative ruling to the court of appeals. 12 U.S.C. Sec. 1818(i)(2)(iv).
 
 
 13
 Thus, Sec. 1818 on its face vests exclusive jurisdiction to review CMP assessments in the courts of appeals; Sec. 1818(i)(1) explicitly and unequivocally withdraws jurisdiction from all other courts to "affect, by injunction or otherwise" CMP assessments. Furthermore, Sec. 1818 withdraws jurisdiction even from the courts of appeals until after the administrative proceedings have run their course. See 12 U.S.C. Sec. 1818(i)(1) ("Except as otherwise provided [in Sec. 1818], no court shall affect ...") (emphasis added). According to Sec. 1818's plain language, the district court simply had no jurisdiction to enjoin the administrative proceedings.
 
 
 14
 Courts have, however, created a limited exception to Sec. 1818's specific withdrawal of jurisdiction from the district courts for actions by the Comptroller that clearly depart from his statutory authority. See, e.g., First National Bank of Grayson v. Conover, 715 F.2d 234, 236 (6th Cir.1983); Groos National Bank, 573 F.2d at 895; Manges v. Camp, 474 F.2d 97, 99 (5th Cir.1973); First National Bank of Scotia v. United States, 530 F.Supp. 162, 168, 169 (D.D.C.1982); Mid America Bancorporation v. Board of Governors, 523 F.Supp. 568, 574 (D.Minn.1980). The district court recognized this exception to Sec. 1818(i)(1)'s express withdrawal of jurisdiction. In determining it lacked jurisdiction, the district court rejected, on the merits, the directors' contention that the Comptroller had exceeded his statutory authority. See 641 F.Supp. at 601-03.
 
 
 15
 The so-called "statutory authority" exception originated in three Supreme Court cases: Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). See Manges, 474 F.2d at 99 (citing Oestereich and Breen ); First National Bank of Grayson, 715 F.2d at 236 (citing all three cases). In these three cases, the Court allowed district courts to enjoin or set aside agency action despite statutory review provisions that seemingly deprived the district courts of jurisdiction. Leedom, Oestereich, and Breen all involved agency action that was "blatantly lawless," Oestereich, 393 U.S. at 238, 89 S.Ct. at 416, and "contrary to a specific prohibition" that was "clear and mandatory," Leedom, 358 U.S. at 188, 79 S.Ct. at 184. See also Clark v. Gabriel, 393 U.S. 256, 260, 89 S.Ct. 424, 427, 21 L.Ed.2d 418 (1968) (per curiam) (Douglas, J., concurring) ("[I]t takes the extreme case where the Board can be said to flout the law, to warrant preinduction review under Oestereich.") Furthermore, all three cases involved situations where alternate means of judicial review were either uncertain or, in the Court's view, inadequate to protect the plaintiffs' rights. See Leedom, 358 U.S. at 193-97, 79 S.Ct. at 186-89 (Brennan, J., dissenting); Oestereich, 393 U.S. at 238, 89 S.Ct. at 416; see also General Finance Corp. v. Federal Trade Com'n, 700 F.2d 366, 370 (7th Cir.1983) (discussing Leedom ).
 
 
 16
 Thus, the "statutory authority" exception is available only where the agency has exceeded a plain and unambiguous statutory command or prohibition (or a command or prohibition made clear by "authoritative judicial determination," see General Finance Corp., 700 F.2d at 372)--that is, the agency takes "blatantly lawless" action--in circumstances where no adequate alternative judicial remedy exists for the unlawful activity's victims. Seventh Circuit cases construing Leedom have so limited the exception. See, e.g., General Finance Corp., 700 F.2d at 370, 372; Squillacote v. International Brotherhood of Teamsters, 561 F.2d 31, 39-40 (7th Cir.1977); cf. Hunt v. Commodity Futures Trading Com'n, 591 F.2d 1234, 1236-37 (7th Cir.) (refusing to excuse plaintiff from exhausting administrative remedies because the agency did not clearly violate its authority and judicial review was available after the agency proceedings), cert. denied, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). Furthermore, construing the "statutory authority" exception narrowly is consistent with Congress' constitutional role in controlling the inferior federal courts' jurisdiction, especially where, as here, Congress has expressly and unequivocally withdrawn jurisdiction.
 
 
 17
 The "statutory authority" exception does not apply here because the Comptroller's assessment of CMP's was not contrary to a clear and mandatory prohibition--that is, the Comptroller's action was not "blatantly lawless." In reaching this conclusion, we do not determine whether the Comptroller actually did or did not violate his statutory authority; we hold only that any violation was not a clear violation. See McLain v. Selective Service Local Board No. 47, 439 F.2d 737, 741 n. 8 (8th Cir.1971) (conclusion that district court has no jurisdiction because agency action is not "blatantly lawless" does not bar a subsequent challenge to the agency's action); see also General Finance Corp., 700 F.2d at 370; Squillacote, 561 F.2d at 40; Grutka v. Barbour, 549 F.2d 5, 10 (7th Cir.), cert. denied, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977). The directors must make their challenge to the Comptroller's action through the administrative process provided in Sec. 1818, and then in the court of appeals, if necessary.
 
 
 18
 The directors argue that the Comptroller clearly exceeded his statutory authority in two ways. First, they assert, citing Larimore v. Comptroller of Currency, 789 F.2d 1244 (7th Cir.1986) (en banc), that the Comptroller is actually attempting to impose "personal liability" on them under 12 U.S.C. Sec. 93(a) (which provides that the Comptroller may recover damages for persons injured by violations of banking laws only in an action in federal district court) rather than civil money penalties. In Larimore, the Comptroller attempted to use his cease and desist powers under 12 U.S.C. Sec. 1818(b)(1) to force bank directors to reimburse a bank for losses resulting from loans that exceeded the bank's statutory limit. 789 F.2d at 1245-47. The Comptroller argued that he had the power to order the reimbursement because Sec. 1818(b)(1) allowed him " 'to take affirmative action to correct the conditions resulting' " from violations of banking laws. 789 F.2d at 1246 (quoting Sec. 1818(b)(1)). On appeal from the administrative proceeding, this court rejected the Comptroller's argument, holding that the proper proceeding to impose personal liability for damages was a suit in district court pursuant to Sec. 93(a). 789 F.2d at 1252, 1253, 1256. To allow the Comptroller to order reimbursement through the administrative process would "eviscerate" Sec. 93(a)'s requirement that the Comptroller bring reimbursement actions in district court. The court found no evidence in the statute or legislative history that Congress intended that result. 789 F.2d at 1252-53.
 
 
 19
 Larimore does not appear to control this case (although the directors may argue on review from the administrative proceedings that it does). Section 93(a) is a damages provision; it provides that bank directors may be liable to reimburse the bank or other people the directors have injured by violating banking laws. Section 1818(i)(2)(i), on the other hand, is a penalty provision designed to punish and deter violations of cease and desist orders. The Comptroller need not prove damages to collect CMP's. Here, unlike in Larimore, the Comptroller does not seek to have the directors reimburse the bank or any other persons for losses resulting from the directors' activities. Instead, the Comptroller simply seeks to impose a penalty on the directors; the money the Comptroller collects will go to the United States Treasury, not to the Bank or any other person. 12 U.S.C. Sec. 1818(i)(2)(vii).
 
 
 20
 The directors also argue that the Comptroller may impose CMP's only for violations of a cease and desist order that occur on and after the date of assessment, and not for past violations. The directors base their argument primarily on Sec. 1818(i)(2)(i)'s present tense language: any director who "violates " a final cease and desist order "shall forfeit and pay a civil penalty ... for each day the violation continues." (Emphasis added.) According to the directors, the Comptroller is clearly exceeding his statutory authority by imposing CMP's on them for past violations of the cease and desist order.
 
 
 21
 It is reasonable to argue that Congress wrote Sec. 1818 in the present tense to emphasize that Sec. 1818 provides a daily penalty for continuing violations, especially since Sec. 1818 states that a CMP is a penalty "for each day the violation continues." It is also reasonable to argue from Sec. 1818's present-tense language that the Comptroller must notify a director that from the date of the notice the director will be assessed with a daily penalty (up to $1000 per day) unless the director cures the violation. As a practical matter, directors who know they are liable for a specified amount for each day a violation continues would be likely to cure the violation in short order.
 
 
 22
 Furthermore, although the CMP's here were relatively small, the Comptroller's interpretation of the CMP provision would allow the Comptroller to assess a huge CMP long after a director violates a cease and desist order. Here, for example, the Comptroller assessed the CMP's against the directors almost nine months after discovering the violations for which he assessed the penalties. Had the Comptroller chosen to assess a penalty for each day of the violation, the total penalty for each director could have been hundreds of thousands of dollars. Thus, the Comptroller's interpretation could lead to enormous liability for bank directors; the Comptroller may impose this draconian sanction without proving that the directors' actions actually damaged the bank (or anyone else) and without notifying the directors and giving them an opportunity to end their violations before the Comptroller imposes such penalties.
 
 
 23
 However, Sec. 1818(i)(2)(ii) requires the Comptroller to consider "the size of financial resources and good faith ... of the person charged, the gravity of the violation, the history of previous violations, and such other matters as justice may require" in determining the amount of a CMP. This may obviate any potential unfairness that the Comptroller's interpretation of Sec. 1818(i)(2)(i) might otherwise cause. But we do not decide today who has correctly interpreted Sec. 1818(i)(2)(i). We hold only that since the Comptroller's action was not blatantly lawless, the district court did not have jurisdiction to enjoin the administrative proceedings.
 
 
 24
 The "statutory authority" exception does not apply in this case for another reason: Sec. 1818(i)(2)(iv) provides the directors adequate judicial review of the Comptroller's action in the court of appeals after the agency proceedings conclude. At that time, the directors may raise their challenges to the Comptroller's statutory authority to assess CMP's against them. See 5 U.S.C. Sec. 706(2)(C) (under the Administrative Procedure Act, the reviewing court may set aside agency action that exceeds the agency's statutory authority). It is true that Sec. 1818(i)(2)(iv) states, "The findings of the agency shall be set aside if found to be unsupported by substantial evidence as provided in Section 706(2)(E) of Title 5." One might argue that Congress, by implication, has limited review strictly to the Comptroller's findings of fact, but we find this argument unpersuasive. This sentence in Sec. 1818(i)(2)(iv) does not, on its face, limit judicial review only to findings of fact. Also, the legislative history simply states that CMP's "are required to be assessed ... with the opportunity for a hearing under the Administrative Procedure Act with the right of appeal to a U.S. circuit court of appeals." S.Rep. No. 95-323, supra, at 9.
 
 
 25
 The only conceivable inadequacy in the remedy provided here is that the directors must go through the expense and inconvenience of the administrative process before obtaining judicial review. While this expense and inconvenience may be substantial, "litigation expense and attendant inconvenience do not constitute irreparable injury sufficient to justify judicial intervention into pending agency proceedings." Rosenthal & Co. v. Commodity Futures Trading Commission, 614 F.2d 1121, 1128 (7th Cir.1980). The judicial review Congress has provided is adequate to protect the directors if the Comptroller has acted unlawfully in assessing CMP's in this case.
 
 
 26
 Therefore, the district court correctly held that it did not have subject matter jurisdiction to enjoin the administrative proceedings here. In Sec. 1818(i)(1), Congress has expressly and unequivocally deprived the district courts of jurisdiction over CMP assessments by the Comptroller under Sec. 1818(i)(2)(i). This case does not fit into the narrow "statutory authority" exception to Congress' withdrawal of jurisdiction because the Comptroller has not clearly violated his statutory authority and because Congress has provided adequate judicial review after the administrative process is complete. We affirm the district court's judgment that it lacked jurisdiction. We neither decide nor express a view on the merits of the directors' substantive arguments.
 
 
 27
 AFFIRMED.