**In the Matter of FIRST NATIONAL BANK OF EDEN, SOUTH DAKOTA, Petitioner,**

v.

**DEPARTMENT OF the TREASURY, OFFICE OF the COMPTROLLER OF the CURRENCY, Respondent.**

**No. 77–1483.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1977.

Decided Jan. 13, 1978.

L. R. Gustafson, Britton, S. D., for petitioner.

Michael F. Hertz, Atty., Appellate Section, Civil Division, U. S. Dept. of Justice, Washington, D. C., Barbara Allen Babcock, Asst. Atty. Gen., Ronald R. Glancz, Attys. and Gary L. Ryan, Atty., Litigation Div., Washington, D. C., on brief, for respondent.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

First National Bank of Eden seeks review of an order issued by the Comptroller of the Currency requiring petitioner to cease and desist from certain banking practices found to be "unsafe or unsound" within the meaning of 12 U.S.C. § 1818(b).

In September 1976 the Comptroller served upon the Bank a Notice of Charges, along with a temporary cease-and-desist order, alleging that the Bank had "violated laws, rules, or regulations, or . . . otherwise operated in an unsafe and unsound manner" in a number of its banking practices.[1] After a hearing on the charges an administrative law judge (ALJ) concluded that the allegations had been established and recommended that a cease-and-desist order be issued as provided in 12 U.S.C. § 1818(b). The Comptroller then issued an Order to Cease and Desist, which required the Bank to discontinue its investment in criticized assets; correct prior violations of 12 C.F.R. § 1.8 regarding credit information on investments; develop a written investment account policy and plan for adding retained earnings to capital accounts; correct deficiencies in its internal control and audit procedures; and develop a salary plan for executive officers specifically limiting the amount of salaries and bonuses so that the Bank's total personnel expenses would not exceed 1.5% of its average assets. The order also included a requirement that the Bank President and Vice-President reimburse the Bank in the amount of $61,000 for bonuses paid to them in 1975.

In its petition for review the Bank challenges the validity of the order, alleging that the evidence adduced at the hearing did not support the ALJ's findings, which were adopted in full by the Comptroller. Our review under the Administrative Procedure Act is limited to a determination of whether the Comptroller's findings are supported by substantial evidence on the record as a whole. 5 U.S.C. § 706(2)(E). *Cf. Camp v. Pitts,* 411 U.S. 138, 140–41, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

The testimony of three national bank examiners at the hearing before the ALJ established that the underlying facts set out in support of the charges against the Bank were true, and that the activities alleged constituted unsafe and unsound banking practices.[2] Many of the criticized practices had been carried on for an extended period despite repeated warnings in prior bank examination reports. Our review of the record as a whole indicates that the findings of the ALJ were supported by substantial evidence.

The Bank specifically challenges the validity of those provisions in the Order to Cease and Desist which require that future personnel expenses be limited to 1.5% of average assets and that the Bank be reimbursed for the $61,000 paid to the executive officers as bonuses for 1975. In view of the supporting evidence, and the Comptroller's expertise and discretion in this area, the decision can only be disturbed if it is shown to be arbitrary and capricious. *See Dakota National Bank & Trust Co. v. First National Bank & Trust Co.,* 554 F.2d 345, 350–51 (8th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977).

Title 12 U.S.C. § 1818(b)(1) provides that a cease-and-desist order may, in addition to prohibiting further unsafe practices, "require the bank and its directors, officers, employees, and agents to . . . take affirmative action to correct the conditions resulting from any such violation or practice." The record as a whole contains substantial evidence to support the findings upon which the Order to Cease and Desist was based. The requirements imposed in the order are authorized by the statute and

1. The "unsafe and unsound" practices included:

   1. accumulation of certain unsafe assets in an amount constituting 37% of the Bank's gross capital funds;

   2. failure to implement adequate internal controls and auditing procedures;

   3. failure to maintain adequate credit information on certain Bank investments, contrary to 12 C.F.R. § 1.8;

   4. payment of excessive bonuses to Bank officers;

   5. payment of excessive salaries to Bank officers.

2. Congress did not define unsafe and unsound banking practices in § 1818(b). However, the Comptroller suggests that these terms encompass what may be generally viewed as conduct deemed contrary to accepted standards of banking operations which might result in abnormal risk or loss to a banking institution or shareholder.

no abuse of discretion is apparent in this regard.

The order of the Comptroller is affirmed.