---

No. 95-3346

---

THE GREENE COUNTY BANK,                     *
                                            *
        Petitioner,                         *
                                            *
v.                                          *   On Petition for Review of
                                            *   Decision and Order of the
FEDERAL DEPOSIT INSURANCE CORP.,  *   Federal Deposit Insurance
                                            *   Corporation
        Respondent.                         *

---

Submitted: June 14, 1996

Filed: August 7, 1996

---

Before MORRIS SHEPPARD ARNOLD and MURPHY, Circuit Judges, and
JACKSON*, District Judge.

JACKSON, District Judge.

     The Greene County Bank appeals a cease and desist order issued by the Board of Directors of the Federal Deposit Insurance Corporation ("FDIC"). The order requires the Bank to comply with a February 12, 1992 Memorandum of Understanding ("MOU") regarding certain activities in the futures and securities markets, and was prompted by the alleged failure of the Bank to comply with the MOU. The Bank attacks the order as not supported by substantial evidence and as arbitrary and capricious. The Bank also argues that the FDIC applied an incorrect standard in determining that the Bank engaged in unsafe and unsound practices. We uphold the cease and desist order.

---

    * The HONORABLE CAROL E. JACKSON, United States District Judge for the Eastern District of Missouri, sitting by designation.

## I. BACKGROUND

The FDIC initiated an administrative action against the Bank pursuant to 12 U.S.C. § 1818(b) on July 26, 1993 by issuing a Notice of Charges and Hearing.  Following a three-day hearing, an Administrative Law Judge ("ALJ") recommended against the issuance of a cease and desist order.  Upon review of the ALJ's decision, the FDIC Board found failures of compliance that constituted violations of the MOU and the FDIC Policy Statement as well as unsafe and unsound practices. As a result, the FDIC issued a cease and desist order requiring the Bank to comply with the MOU and FDIC Policy Statement.

## II. DISCUSSION

In considering the Bank's challenge to the sufficiency of the evidence to support the cease and desist order, our review is limited to a determination of whether the agency decision is supported by substantial evidence on the record as a whole. Northwest National Bank v. United States Dept. of the Treasury, 917 F.2d 1111 (8th Cir. 1990); First Nat'l Bank of Eden v. Dept. of the Treasury, 568 F.2d 610, 611 (8th Cir. 1978). Substantial evidence
"is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). In reviewing the agency decision, we consider the entire record, including the ALJ's recommendation. Simon v. Simmons Food, Inc., 49 F.3d 386, 389 (8th Cir. 1995).  If the agency departs from the findings of the ALJ, it must show that it gave "attentive consideration" to the ALJ's conclusions. Id. at 390.

At issue in this case is whether the process by which the Bank engaged in futures and securities market activities complied with the procedures set forth in the MOU. The MOU requires the Bank to (1) develop written policies for addressing interest rate risk exposure and governing the use of futures to reduce interest rate risk and (2) provide detailed justification each time the Bank uses

futures to reduce interest rate risk.[1]  The MOU also incorporates the FDIC Policy Statement which, in part, requires the Bank's board of directors to approve any plan to engage in futures market activities. In his recommended decision, the ALJ concluded that the Bank had complied with the MOU in material respects but had not adopted an investment policy in compliance with Section 1(c).  The ALJ, however, did not recommend the issuance of a cease and desist order. In its reversal of the ALJ decision, the FDIC found that the Bank had in fact failed to adhere to the MOU requirements by engaging in futures and securities market transactions without prior approval by the Bank's board of directors and without proper analysis and documentation. The FDIC concluded that in light of the risks involved in these types of transactions, complete compliance with the MOU was required, and the cease and desist order was necessary to ensure such compliance.

The record shows that the Bank failed to comply with the terms of the MOU and the FDIC Policy Statement when it did not properly document and obtain approval of the acquisition of a number of spread positions.  The Bank began acquiring these positions in the Fall of 1992.  However, these investments were not formally approved by the Board until March 29, 1993, months after they were made.  The only document in the record which contained the Bank's explanation of its strategy for this type of investment was undated.  The FDIC concluded that to the extent that any documents contained language that could be construed as authorizing the acquisition of these spread positions, such language was too vague

---

[1] Section 1(a) of the MOU requires the Bank, within 30 days of the date of the MOU, to develop a written plan of action to reduce the bank's interest rate risk exposure. Section 1(b) requires the Bank to adopt a written policy governing the use of futures contracts as a method for reducing interest rate risk which incorporates the requirements of the FDIC Policy Statement. Section 1(b) also requires the Bank to perform specific analyses each time it uses futures to reduce interest rate risk. Section 1(c) requires the Bank, within 30 days of the date of the MOU, to devise an interest rate risk exposure/rate sensitivity policy.

to comply with the requirements of the FDIC Policy Statement. The testimony of the FDIC examiner in charge supports this conclusion.

The FDIC's decision was also based on substantial evidence of deficiencies regarding the Bank's calculation and analysis of interest rate risk exposure. The evidence revealed that the Bank did not calculate and analyze its interest rate risk exposure on a regular basis as the MOU required. Although the ALJ believed that this deficiency could be excused because the Bank was receiving gap analyses measuring the exposure from the FDIC and other examiners, clearly the terms of the MOU required regular monitoring by the Bank.

After reviewing the record as a whole, we find that the FDIC's determination that the Bank failed to fully comply with the conditions of the MOU is supported by substantial evidence.

The Bank also attacks as arbitrary and capricious the FDIC's decision to issue a cease and desist order. Our review of the remedy imposed by the FDIC to address unsafe and unsound banking practices is limited. The remedy may not be set aside unless it is "arbitrary, capricious, or otherwise contrary to law." Currie State Bank v. FDIC, 878 F.2d 215, 218 (8th Cir. 1989). Pursuant to 12 U.S.C. § 1818(b)(1), the FDIC may issue a cease and desist order to prevent a bank from engaging in unsafe or unsound practices. Proof of misconduct alone entitles the FDIC to invoke its broad cease and desist enforcement powers. Oberstar v. FDIC, 987 F.2d 494, 502 (8th Cir. 1993).

In this case, the FDIC concluded that the Bank's failure to comply with the MOU constituted an unsafe and unsound banking practice, justifying the issuance of a cease and desist order. As discussed above, the record contains substantial evidence to support the agency's decision. Upon finding an unsafe and unsound banking practice, the FDIC may require a bank to "take affirmative

4

action to correct the conditions resulting from any such . . . practice." 12 U.S.C. § 1818(b)(1). The requirements imposed by the cease and desist order constitute the type of affirmative action that is authorized by the statute.[2] See Eden, 568 F.2d at 611 n.1 (upholding cease and desist order to address the failure to implement internal controls and auditing procedures). Based on the foregoing, we conclude that the choice of remedy by the FDIC in this case was not arbitrary and capricious.

Finally, the Bank argues that the FDIC applied the wrong standard in determining that the Bank's failure to comply with the MOU constituted an unsafe and unsound practice. The Bank argues that application of the "unsafe and unsound practice" standard is limited to practices having a reasonably direct effect on the Bank's financial soundness, a situation not present in this case. See Matter of Seidman, 37 F.3d 911 (3rd Cir. 1994); Hoffman v. FDIC, 912 F.2d 1172 (9th Cir. 1990); Gulf Federal Savings & Loan v. FHLBB, 651 F.2d 259 (5th Cir. 1981), cert. denied, 458 U.S. 1121 (1982). It is well-settled in this Circuit, however, that an "unsafe or unsound practice" exists where the conduct is "deemed contrary to accepted standards of banking operations which might result in abnormal risk or loss to a banking institution or shareholder." Eden, 568 F.2d at 611 n.2. See also Oberstar, 987 F.2d at 502. We conclude that the FDIC in this case applied the appropriate standard to determine whether the challenged action constituted an "unsafe or unsound practice."

The August 1, 1995 Decision and Order of the FDIC Board of Directors is affirmed.

---

[2] The cease and desist order requires the Bank, within 30 days of the date of the order, to submit documentation showing the Bank's full compliance with the MOU and FDIC Policy Statement. The cease and desist order also requires the Bank to calculate interest rate risk exposure on a quarterly basis.

A true copy.

Attest:

                  CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.